## THE REPUBLIC.

### (District Court, S. D. New York. June 30, 1900.)

1. COLLISION—STEAM VESSELS CROSSING.

A steam canal boat was primarily in fault for a collision in East river, close to the Brooklyn shore, caused by her attempting to cross the bow of a ferry boat, which was about to enter her slip, without giving any signal of such intention, where the ferry boat was also on her starboard, and therefore the privileged vessel.

2. SAME—CONTRIBUTORY FAULT—PRIVILEGED VESSEL.

The one of two steam vessels crossing which is privileged cannot be held liable to contribute to the damage resulting from a collision due to the failure of the other vessel to keep out of the way, because she failed to stop and reverse as soon as she might have done, where, until it was too late to avoid the collision, she had no reasonable notice that the other vessel would not perform her duty.

In Admiralty. Suit for collision.

Cowen, Wing, Putnam & Burlingham, for libelant.

J. J. Macklin, for respondent.

BROWN, District Judge. At about 6 a. m. of November 12, 1898, as the libelant's steam canal boat Gamma, 96 feet long by 17½ beam,

was coming down the East river against the flood tide near the Brooklyn shore, she came in collision off the lower pier of the Catherine Street Ferry on the Brooklyn side, with the ferry boat Republic, which had crossed from the New York side and was making her Brooklyn slip. The port bow of the ferry boat struck the starboard side of the Gamma about 25 feet from her stem, doing damage for which the above libel was filed.

The captain of the Gamma was intending to land his wife at the pier or bulkhead immediately below the Catherine Ferry slip, and for that reason was directing his course towards the Brooklyn shore. The collision took place about 25 or 50 feet off the end of the pier that bounds the lower slip. The account given by the master of the Gamma is not very consistent as to the position of the two boats at different times  There is no doubt, however, that the ferry boat was seen by him at a considerable distance and when she was on the New York side of the river, and that he saw her afterwards heading towards the Brooklyn shore and showing both her colored lights when some 500 feet distant from him. The Gamma was also seen from the ferry boat when a considerable distance off. The pilot of the ferry boat testifies that another tug was coming down river about 150 feet ahead of the Gamma and about the same distance further out from the Brooklyn shore; that he gave a signal of one whistle to both, which was answered by the tug but not answered by the Gamma, and that the tug passed under his stern at about the time of the collision; that when about 500 feet from the Gamma he gave to her a second signal of one blast, which was long continued, and upon which he expected that the Gamma would keep out of his way, but that she afterwards headed more towards the Brooklyn shore, attempting to cross his bow, seeing which the ferry boat reversed her engines, getting about 1½ turns of her wheel backward, but not sufficient to stop her before collision. The captain of the Gamma, on the other hand, hoping as he says to pass ahead of the Republic, increased his speed, and gave a signal of two whistles shortly before collision.

The primary fault for this collision is plainly upon the Gamma; not only because she had the Republic on her own starboard hand, and for that reason was bound to keep out of her way, but because she had no right to obstruct the ferryboat's entrance to her slip by crossing her bow and making a landing altogether unusual without any proper or timely signal to warn the Republic of her intention. She gave no such signals herself, nor did she respond to the signals given by the Republic until just before collision, when her signal of two whistles was too late to be of any use.

My only doubt in the case has been whether the Republic stopped and backed as soon as she had reasonable notice that this was necessary to avoid collision. If the other tug referred to, which was coming down river and which passed under the stern of the Republic, was in the position which the captain and deckhand of the Republic state, this alone would seem to justify the Republic in keeping on, as she could not safely back earlier, the case being practically the same as that of The Clinton (D. C.) 97 Fed. 510. The testimony of the quartermaster, however, is that at the time of collision, the other tug was

several hundred feet astern of the ferry boat. If that is so, the tug's position was not such as to prevent earlier reversal by the Republic.

The test of liability of the privileged vessel in such cases is, whether she stopped and reversed as soon as she had reasonable notice that the other vessel would not perform her duty of keeping out of the way, or could not do so; and whether by reversal at that time the collision would probably have been avoided. In adjudging this question all the circumstances must be taken into consideration, not only the maneuvering power of the privileged vessel but particularly the kind of vessel that is to keep out of the way, her apparent facilities for doing so and any impediments in the way. A very different obligation would rest on the privileged vessel as respects a tug incumbered with a heavy and unwieldly tow, from that applicable to a light and easily maneuvering craft, which might be expected to be able to perform her duty of keeping out of the way within a very limited space. The Gamma in the present case was light and a comparatively small boat; there were no obstacles in the way of performing her duty; she had a pilot house, like a tug, and she was apparently, so far as the pilot of the Republic could perceive, of that class of boats that can be handled with ease and turn or stop within a small space. The Gamma's evidence, however, is that she cannot be so easily and quickly handled as the ordinary tugs about the harbor. The pilot of the Republic had no means of understanding this, and was justified in acting upon appearances. The fact that he reversed and got a turn and a half of his wheel backward before collision, shows that the order to reverse must have been given at some little distance before reaching the line of the Gamma's course and longer before collision than the estimate in seconds testified to. In prudence, I think, he should have stopped somewhat earlier; but to have stopped so much earlier as to have been able to avoid the collision, would have required the Republic to stop and reverse at a time when apparently the Gamma could have avoided the collision much more easily than the Republic could, and when the Gamma was rightly expected to do so. This the Republic was certainly not required to do, because she had a right to expect the Gamma to perform her duty beyond that limit of time. The Gamma was a much smaller boat than the Republic and apparently capable of handling herself and stopping very much easier and quicker. In the position of the two vessels, therefore, it follows that the Republic had a right to expect that the Gamma would keep out of the way, and that she was able to do so, down to a time when the Republic by backing could no longer avoid her. The absence of any signal from the Gamma, gave the Republic the right to expect assuredly that the Gamma would perform her duty to stop and go astern until it was too late for the Republic to avoid collision. Had the Republic reversed a little earlier, collision would still have occurred.

The case is one in which, while the fault of the Gamma is clear, the fault of the Republic is so doubtful, that she cannot justly be required to share the loss. The City of New York, 147 U. S. 72, 85, 13 Sup. Ct. 211, 37 L. Ed. 84. On these grounds I think the libel must be dismissed.