### THE TENADORES.

### THE MURILLO.

(Circuit Court of Appeals, Second Circuit. April 7, 1924.)

#### No. 274.

1. Collision ⚖102—Crossing steamships both held in fault for collision in New York Harbor.

   A collision in New York Harbor on a clear day, under conditions most favorable for navigation, between two steamships on crossing courses, *held*, on conflicting and unsatisfactory testimony, due to faults of both vessels; the burdened vessel for signaling for the other to give way at a time when only instant acquiescence could avert collision, and the other for not instantly acting on such signal, which might have prevented the collision, instead of which she gave a cross signal and continued her course and speed.

2. Collision ⚖16—Duty of privileged vessel to prevent collision, if possible.

   A privileged vessel has no right to use her privilege to produce or assist collision.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the Liverpool, Brazil & River Plate Steam Navigation Company, owner of the steamship Murillo, against the steamship Tenadores; the Tenadores Steamship Company, claimant and cross-libelant. Decree holding both vessels in fault, and libelant appeals. Affirmed.

Suit is for collision between Murillo and Tenadores. The owners of the first-named vessel filed libel August 2, 1916, nearly five months after collision.

In May, 1917, the Tenadores answered, and in October cross-libeled; the Murillo answered at once.

A deposition was taken in October, 1918, and several in May, 1919; case tried the following December. Every witness excused some or much failure of memory by lapse of time between occurrences and testimony; all might have taken the position of one, who replied "that has been too long for me to remember; I thought that case was dead and buried."

The court below held both vessels at fault; the Murillo appealed.

Burlingham, Veeder, Masten & Fearey, of New York City (Charles C. Burlingham and Ralph W. Brown, both of New York City, of counsel), for appellant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (William H. McGrann and J. H. Turnure, both of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The colliding vessels were of almost exactly the same length beam and tonnage and both able ships; yet they came together in the East River, in the general neighborhood of Governor's Island, on a day when traffic impeded the movements of neither, when shores and landmarks were plainly visible, with a negligible wind, and at or near high-water slack. More favorable conditions for the harbor navigation of such ships (about 8,000 tons gross) can scarcely be imagined.

Tenadores was outward bound from the foot of Fulton street, Manhattan, drawing 26 feet aft, and intended to pass out between the Battery and Governor's Island; Murillo had come up from anchorage grounds, rounded Castle William, and was bound for Pier 8, Brooklyn, drawing light 17 feet. Collision happened at 1:18 p. m. by Murillo's clock and 1:20 by Tenadores; but just *where* it occurred the testimony leaves one in doubt, and unless that locality can be fixed with accuracy all possibility of tracing back with even reasonable certainty the antecedent navigation of both steamers disappears.

[1] Turning to the stories of the two vessels, and independently considering them, neither is wholly credible; each contains some vital statement about the other impossible of belief.

The Murillo avers most positively that she came around Castle William about as close as safety permitted (which at 17 feet is very close) headed for the old ferry at Montague street, Brooklyn, and steadily pursued that course, which took her directly over Dimond Reef, until exactly over that old obstruction the Tenadores hit her Further, she had seen the latter vessel up river, beyond Coenties Reef, in such a position that, in order to get at the Murillo, Tenadores was obliged either to pass over Coenties, or go to the eastward thereof and then swing back westward in order to catch Murillo. But, whatever may be said of Tenadores' navigation, it is impossible that any pilot (and both ships were in charge of Sandy Hook men) ever tried to put a ship drawing 26 feet over either Coenties or Dimond.

Tenadores' story is no better. Her witnesses are sure that, as soon as possible after leaving pier, she straightened out on the deep water

range, or substantially on that course, and while there perceived Murillo two points on the starboard bow, headed directly for her, and 1,000 yards away. This puts Murillo almost skirting the Battery Wall, a place as absurd for her, as on top of Dimond Reef is for the deeper laden vessel.

For these reasons we decline to accept as a consistent story of collision the version of either ship, and start with the following generally admitted facts: When the vessels saw each other, they were approximately 1,000 to 1,200 yards apart, were on crossing courses, with Tenadores traveling about 10 feet to Murillo's 4 and came together with an angle of about 35° between their port sides.

[2] Tenadores was the burdened vessel, under the rules, and her prime duty was to keep out of Murillo's way, while the latter had no right to use her privilege to produce or assist collision; the measure of her duty we last restated in The Binghamton, 271 Fed. 69, and see no reason to go over that ground again. Further, the inland rules were applicable, since each ship was laying a course.

Exactly what those courses were we cannot ascertain, but can deduce from admissions the following: Not over four minutes, and more probably three, elapsed between the moment of mutual sight and the moment of contact. Within that time one or both did or omitted something that produced a peculiarly inexcusable collision. Therefore it becomes necessary to make a definite finding as to who started signaling. Here is violent contradiction; Murillo asserting that she blew one and received an answer of two, and Tenadores declaring that she blew two, received one in reply, and at once backed full astern, and so continued until collision. It is almost admitted that Tenadores had nearly taken off her way before collision, and her engine room record confirms this; it is also confirmatory of the paucity of time between sight and collision.

We think it necessary to find a verdict as to who blew first, although the court below avoided that issue, and a majority of us are of opinion that Tenadores did. It results from this finding that that steamer asked the favor of passing Murillo's bow at a time when, as reasonable observation would have shown, and as subsequent events proved, nothing but instant acquiescence on Murillo's part could avoid collision; but it also results that Murillo was equally bound to see the inevitable result of holding on, the instant Tenadores blew two, and to act accordingly. We believe that she did no more than answer with one, and keep on across the plainly advancing bow of the other steamer. Tenadores was at fault for asking the right of way at a time when the request meant, "Get out of my way, or I'll run you down," and Murillo was at fault for not perceiving the meaning of what Tenadores stated. With her slow speed and full power, she could have avoided collision by yielding right of way to the other vessel.

The foregoing is the nearest approach permitted by the evidence to reconstruction of a scene that undoubtedly occurred somewhere off Governor's Island on a day favorable for navigators. It renders both parties at fault, yet perhaps an equally satisfactory admiralty rusticum judicium is to summarily declare that at that place, and under the cir-

cumstances of wind, weather, tide, and traffic, and in the absence of any evidence of malice or intoxication, both sets of navigators are prima facie negligent, and both have failed to give any reasonable explanation of how they got into admitted disaster.

Decree affirmed, without costs.