948

**HERTZ v. CONSOLIDATED FISH-
ERIES, Inc., et al.**

No. 25940.

United States District Court
N. D. California, S. D.

July 9, 1952.

Derby, Sharp, Quinby & Tweedt, San Francisco, Cal., for libelant.

Joseph L. Alioto, Walter F. Calcagno, San Francisco, Cal., for respondents.

HARRIS, District Judge.

Libelant, owner and pilot of a 36–foot gas screw called the Diana Claire, seeks to recover damages from respondents, owners of a 55.8-foot fishing vessel called the Crescent which caused the sinking of the Diana Claire in a collision at sea.

During the trial, the parties agreed upon certain facts: The collision took place on a clear, windless day upon a calm sea. Both vessels were navigating on the high seas outside the Golden Gate and were subject to the regulations set forth in the International Rules of Navigation, 33 U.S.C.A. §§ 61–141.

The Diana Claire was traveling at about 8 knots and was unencumbered. The Crescent was making about 2 knots and was encumbered with a dragline pulling about 5,000 pounds, plus the weight of the fish in the net.

The Diana Claire was moving in a southeasterly direction and the Crescent was navigating in a westerly direction as the vessels approached on crossing courses.

The angle of the convergence was from 40° to 45°, with the Diana Claire on the starboard side of the Crescent before the collision and the Crescent off the port bow of the Diana Claire. The Diana Claire was navigating through an automatic pilot and never changed course prior to the collision.

The Captain of the Crescent reversed his vessel when the two boats were within 100 feet or less of one another. He did not change course. He first noted or heeded the Diana Claire when the two boats were a maximum of 200 yards apart.

The impact between the vessels caused no appreciable damage to the Crescent. It made a hole in the Diana Claire which permitted water to enter rapidly until the vessel sank.

The parties dispute certain other facts. For example, the libelant testified that he placed the Diana Claire's engines in reverse shortly before the collision but did not succeed in taking the way off the vessel in time to avoid the collision. The Captain of the Crescent refused to admit that libelant made any effort to place the boat in reverse. Libelant testified that he first saw the Crescent when the two vessels were three-quarters of a mile apart. The record contains other testimony indicating that perhaps the boats were separated by not more than a half mile of water when the Captain of the Diana Claire first saw the Crescent. The pilot of the latter questions whether the Captain of the Diana Claire saw the Crescent at any time before the collision. There are other points of difference between the litigants but most of the basic facts are not in dispute. From the events which admittedly transpired (and despite the several conflicts in the narrative of events), the Court is able to reconstruct the accident with sufficient clarity to apply the appropriate law and to fix liability.

Libelant contends that the accident is governed by Articles 19, 21, 22 and 23 of the International Rules, 33 U.S.C.A. §§ 104, 106–108, which articles deal with a crossing situation such as that which occurred in the instant case. The vessel which has the right of way is known as "privileged," while the vessel which must give way is known as "burdened." The vessel having the other on her starboard hand is the burdened vessel. Thus, the Crescent was the burdened vessel and the Diana Claire was privileged.

Respondents assert that a privileged vessel may not hold tenaciously to its privilege when such course means a collision. The navigator of a vessel must exercise some judgment and maneuver his vessel in order to avoid accidents. Despite her privilege, she will be held liable if she fails to take steps necessary to prevent a collision. The Tenadores, 2 Cir., 298 F. 740; The Republic, D.C., 102 F. 997, 999.

Respondents note that libelant testified he discovered the Crescent at least one-half mile away. He saw no one on lookout duty until the vessels were on top of each other. Rudder control or adjustment of speed would have made the collision impossible. Instead, he maintained the Diana Claire's 8 knots on automatic pilot and made no effort to alter his course. He did nothing, according to his own testimony, until the last moment when he put the Diana Claire in reverse. Respondents contend that such disregard of the Crescent, viewed from one-half to three-quarters of a mile away, should bar any right of recovery which the Diana Claire might be accorded by reason of the privilege enjoyed by a vessel in her position.

Libelant's testimony was throughly unimpressive and the story he told was improbable. The Court is convinced from the testimony that libelant set the automatic pilot and then went below with his wife. His wife was in the bunk. He left the wheel unattended and did not return until it was too late to either change the course or avoid the accident. During the time he was below there was no lookout. He did not return to the controls until he was upon the respondent vessel and under the circumstances exercised no care at all.

Even though special circumstances may not have been present by reason of the status and occupation of the Crescent, respondents urge that Article 27 is applicable inasmuch as libelant failed to regard "all

950

dangers of navigation and collision" when he handled the Diana Claire in the manner in which he did. The Kaga Maru, D.C., 18 F.2d 295; The Virginia and Joan, 1 Cir., 86 F.2d 259. In the latter case, which also involved a collision and the sinking of a trawler by a larger boat, the Court sustained the trial judge on the ground that the navigator of the smaller vessel could have avoided the collision by effective maneuvering. The trial judge had found that visibility had been one-half mile which enabled the smaller vessel to become apprised of the restricted movements on the part of the larger Virginia and Joan and gave the smaller vessel ample opportunity to sail free of the impending collision.

Respondents rely upon the doctrine of last clear chance as a final defense. They point out that the Diana Claire did nothing to slacken speed, give right or left rudder or stop during the distance of one-half to three-quarters of a mile when its pilot allegedly observed, or should have observed, that the slowly moving Crescent, dragging 5,000 pounds at 2 knots, was not conscious of the risk of collision. They believe that respondents' conduct was comparable to that of the operator of The Michigan in The Sanday, 2 Cir., 122 F.2d 325. The Captain of The Michigan failed to reduce speed in sufficient time to avoid a collision with a tug which was on the wrong side of the channel, but which was seen well in advance of the accident.

Unless it be maintained that libelant found himself in a position "*in extremis*," he cannot be excused for the manner in which he asserted his privilege even when a collision thereby became inevitable. Careful observation of the Crescent would have shown libelant that the slow-moving fishing vessel was bound to strike the Diana Claire unless its operator reduced speed or. changed her course.

The Court does not believe that under the circumstances of this case the respondents were at fault.

Accordingly, it is ordered that libelant take nothing by his libel and that a decree be entered in favor of respondents, together with costs.